IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

<table>
<tr><td></td><td>*</td><td></td></tr>
<tr><td>DORIS M. JACKSON,</td><td></td><td></td></tr>
<tr><td></td><td>*</td><td></td></tr>
<tr><td>Plaintiff,</td><td></td><td></td></tr>
<tr><td></td><td>*</td><td></td></tr>
<tr><td>v.</td><td></td><td>CIVIL NO.: WDQ-08-1687</td></tr>
<tr><td></td><td>*</td><td></td></tr>
<tr><td>KATHLEEN SEBELIUS, <i>Secretary</i></td><td></td><td></td></tr>
<tr><td><i>of Health and Human Services</i></td><td>*</td><td></td></tr>
<tr><td></td><td></td><td></td></tr>
<tr><td>Defendant.</td><td>*</td><td></td></tr>
</table>

*    *    *    *    *    *    *    *    *    *    *    *    *

MEMORANDUM OPINION

Doris M. Jackson sued Kathleen Sebelius[1], Secretary of the Department of Health and Human Services ("HHS"), for race discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII").[2]  Pending is Sebelius's motion for summary judgment.  For the following reasons, Sebelius's motion will be denied.

I.  Background[3]

In May 1999, Jackson, an African-American, began working at the HHS as a Health Insurance Specialist in the Division of Acute Care Services ("DACS"), within the Survey and Certification Group

---

[1]  Pursuant to Fed. R. Civ. P. 25(d), Kathleen Sebelius, as the successor to former Secretary Michael O. Leavitt, was automatically substituted as the proper party defendant.

[2]  42 U.S.C. § 2000e <i>et seq</i>. (2000).

[3]  In her response, Jackson adopted the background statement from this Court's previous Memorandum Opinion, filed on January 7, 2009.  Pl. Opp. 2.

("SCG") at the Center for Medicare and Medicaid Services

("CMS").[4]  Pl. Opp. 2.  DACS oversees the accreditation of

hospitals for participation in Medicare and reviews applicants

seeking to participate in Medicare.  *Id*.  She had previously

worked as a Health Insurance Specialist in CMS's Clinical

Standards Group, where she developed Medicare quality standards

for acute care hospitals, nursing homes, and home health

agencies.  Doris Jackson EEOC Decl. ¶ 3.

In April 2002, Jackson, a GS-13 employee, asked Frank

Sokolik, Director of DACS and her supervisor, about a promotion

to a GS-14 position.  Doris Jackson Dep. 11:1-12:6, Nov. 8, 2005.

Sokolik told her that she was already doing the work of a GS-14,

and he would try to get the Center for Medicaid State Operations

("CMSO") to allocate two GS-14 level positions for her and Jackie

Kosh-Suber, another African-American female.[5]  Jackson EEOC Decl.

¶ 6.  In June 2002, Sokolik continued to state that he would get

two GS-14 positions and that Jackson and Kosh-Suber were the most

qualified for the promotions.  Jackson Dep. 12:10-17.

In early 2003, Sokolik received approval for a GS-14

position but did not secure it, and it was cancelled.  Frank

Sokolik Decl. ¶ 2, Apr. 19, 2005.  He later said that the

position had never been approved.  Jackson Dep. 12:21-13:5.

---

[4] Jackson was a GS-13 level employee.

[5] Kosh-Suber was also a GS-13 employee.

Sokolik has since stated that he lost the position because he had been too busy working on a report for the Government Accountability Office ("GAO") to prepare a job description. Sokolik Decl. ¶ 2.  Meanwhile, in 2003, Sokolik prepared a position description for a GS-13 position and promoted Amber Wolfe, a Caucasian, to it.  Amber Wolfe Dep. 25:1-26:8, Nov. 2, 2005.  Before Wolfe's promotion, only African-American candidates had been eligible for promotion.  Jackson Dep. 35:2-36:11.

In 2004, Sokolik claimed he was still trying to get the GS-14 positions.  Jackson Rebuttal Decl. 1.  On January 23, 2004, Jackson and Kosh-Suber asked Sokolik why the positions had not been approved, and he said he would get back to them in two months.  *Id.* at 3.  During that time, Sokolik knew that Jackson turned down a transfer because she expected to get a GS-14 position at CMS.  Pl. Opp. 2.

In December 2003, Congress passed the Medicare Prescription Drug Improvement and Modernization Act ("Medicare Modernization Act" or "MMA"),[6] which increased CMS's responsibilities.  Pl. Opp. 2.  In summer 2004, finishing the GAO report and the MMA increased the DACS's workload.  Frank Sokolik Dep. 44:1-55:14, Nov. 1, 2005.  In July 2004, Thomas Hamilton, SCG's Director and Sokolik's supervisor, asked his supervisors for additional personnel.  Thomas Hamilton Aff. 2-3, Apr. 25, 2005.

---

[6] 42 U.S.C. § 1395w-101 *et seq.*

3

Although Hamilton's request was denied, he was given a GS-14 position for an employee who was doing extra work. *Id.* Hamilton and Sokolik created a position description for the new position, which would be open only to current CMS employees.[7] Sokolik Aff. 3, Apr. 19, 2005. According to Sebelius, Sokolik worked on the description through early November 2004, and Hamilton and SCG Deputy Director, Angela Brice-Smith, evaluated and revised it into mid-to-late November 2004. *Id.;* Hamilton Aff. 3.

Jackson states that Sokolik tailored the description to Amber Wolfe's duties. Pl. Opp. 25. Jackson told Sokolik on November 17, 2004, that she was leaving DACS for a job with the HHS Office of Inspector General ("OIG"). Jackson Dep. 42:16-20. Sokolik never told Jackson about the new position although he knew that she was leaving because she had not gotten a promotion. Jackson EEOC Decl. ¶ 8. Sokolik states that it was his policy not to announce a position before it was to be posted because he did not want to create expectations. Sokolik Aff. 4. Jackson's last day at CMS was December 10, 2004, and the GS-14 position was posted the same day. Jackson Dep. 43:5-14. Jackson says she would have stayed at CMS had she known of the position, but she never applied or sought to rescind her departure. Jackson EEOC Decl. ¶ 9; Jackson Dep. 43:15-18. Sokolik ultimately promoted

---

[7] Sebelius states that the decision to make the position open only to internal candidates was made on October 26, 2004. Def. Mot. to Dismiss 5-6.

4

Amber Wolfe even though she had just recently become eligible. Pl. Opp. 3.

While Sokolik headed DACS, Wolfe was the only person promoted, and only Caucasians were hired.  Sokolik Dep. 60:9-61:22.  Jackson alleges that Sokolik repeatedly gave "career-enhancing projects" to Caucasians while ignoring requests for more substantive work from African-Americans.  Pl. Opp. 3; Shonte Carter Decl. ¶¶ 2, 3, 5, Jan. 20, 2006; Milonda Helen Mitchell Decl. ¶ 5, Jan. 18, 2006; Anna Mae Gibson Decl. ¶¶ 2, 3, Jan. 12, 2006.  Jackson also alleges that after Sokolik retired in 2005, African-Americans received more substantive assignments.  Gibson Decl. ¶ 4; Carter Decl. ¶¶ 4, 5.

On March 8, 2005, Jackson filed an EEO complaint charging racial discrimination.  Def. Mot. Ex. 28.  The Administrative Law Judge ("ALJ") found in favor of CMS, and CMS adopted the ALJ's findings.  *Id*. Exs. 2 and 29.  Jackson appealed to the U.S. Equal Employment Opportunity Commission ("EEOC").  On April 29, 2008, the EEOC affirmed CMS's and the ALJ's decision and dismissed Jackson's claim.  *Id*. Ex. 30.  On June 27, 2008, Jackson filed this suit against the Secretary of the Department of Health and Human Services.  Paper No. 1.  On January 7, 2009, this Court denied Sebelius's motion to dismiss, or alternatively, for summary judgment.  Mem. Op. 14.  On June 20, 2009, following

discovery,[8] Sebelius again filed for summary judgment.  Paper No. 17.

II.  Analysis

A.   Standard of Review

Under Rule 56(c), summary judgment is appropriate when there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The Court must view the facts and reasonable inferences therefrom "in the light most favorable to the party opposing the motion."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (*quoting United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam)).  The opposing party, however, must produce evidence upon which a reasonable factfinder could rely.  *Celotex*, 477 U.S. at 324.  A mere "scintilla" of evidence is insufficient to preclude summary judgment.  *Anderson*, 477 U.S. at 252.

B.   Failure to Promote

Jackson alleges that Sokolik discriminated against her

---

[8] Discovery added a second deposition of Jackson and a second set of interrogatories from Jackson to the existing administrative record.

because of her race by not promoting her.  Sebelius responds that Jackson's claim fails because (1) Jackson did not apply for the position, (2) Jackson was ineligible for the position because she lacked experience in background check work, (3) Jackson was not more qualified than the selectee, and (4) Sokolik had legitimate, nondiscriminatory reasons for the timing and concealment of the posting.

Under Title VII, it is unlawful "for an employer to fail or refuse to hire . . . or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race." 42 U.S.C. § 2000e-2(a)(1).  To prove a Title VII violation by circumstantial evidence,[9] Jackson must proceed under the three-step scheme of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), most recently refined in *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000) and *Williams v. Giant Food, Inc.*, 370 F.3d 423, 430 (4th Cir. 2004).  First, Jackson must show a *prima facie* case of discrimination.  *McDonnell Douglas*, 411 U.S. at 802; *Williams*, 370 F.3d at 430.  If she does so, Sebelius must present a legitimate, nondiscriminatory reason for the adverse employment action.  *Reeves*, 530 U.S. at 142

---

[9] A Plaintiff may rely upon direct or circumstantial evidence to prove a Title VII claim.  *Hill v. Lockheed Martin Logistics, Mgmt., Inc.*, 354 F.3d 277, 287 (4th Cir. 2004). Jackson relies solely on circumstantial evidence.

(quoting *Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981)).   Then the burden shifts back to Jackson to show that the proffered reason was pretext.   *Id*. at 143.   When an employee establishes a prima facie case and presents evidence that the employer's nondiscriminatory reasons were false, the employee is not always required to introduce additional evidence of pretext to sustain a favorable jury verdict.   *E.E.O.C. v. Sears Roebuck and Co.*, 243 F.3d 846, 854 (4th Cir. 2001) (quoting *Reeves*, 530 U.S. at 147)).

      1.   *Prima Facie* Case

To demonstrate a *prima facie* case of failure to promote, Jackson must prove that she (1) is a member of a protected class; (2) applied for the position; (3) was qualified for the position; and (4) was rejected under circumstance giving rise to an inference of discrimination.   *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 319 n.6 (4th Cir. 2005); *Anderson v. Westinghouse Savannah River Co.*, 406 F.3d 248, 268 (4th Cir. 2005).   The burden of showing a *prima facie* case is not onerous, *Burdine*, 450 U.S. at 253, and is "relatively easy."   *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 960 (4th Cir. 1996).   The first element is undisputed, as Jackson, an African-American, is a member of a protected class.

      a.   Application Requirement

Sebelius argues that because CMS had a formal system for

posting vacancies and Jackson knew about the vacancy, her application was necessary for a *prima facie* case.  Def. Mot. 16-17.  Jackson relies on this Court's prior ruling that it would "treat Jackson as if she had applied" because "the hiring process itself appears suspect."  Pl. Opp. 10.

"If an employer has a formal system of posting vacancies and allowing employees to apply for such vacancies, an employee who fails to apply for a particular position cannot establish a *prima facie* case of discriminatory failure to promote."  *Williams*, 370 F.3d at 430.  But, "if the employer fails to make its employees aware of vacancies, the application requirement may be relaxed and the employee treated as if she had actually applied."  *Id*. at 431; *see Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1022 (6th Cir. 2000).  Thus, "when the hiring process itself, rather than just the decision-making behind the process, is implicated in the discrimination claim or is otherwise suspect," the application requirement may be waived.  *E.E.O.C. v. Metal Serv. Co.*, 892 F.2d 341, 349 (3d Cir. 1990).[10]

---

[10] Sebelius challenges this reading of *William*, arguing that application is an absolute requirement for a *prima facie* case if an employer has a formal system for posting vacancies and the employee is aware of the vacancy. Def. Mot. 18-19.  She relies on several cases, which did not involve concealment of a vacancy until an employee's last day of eligibility to apply.  *See Lowery v. Circuit City Stores, Inc.*, 158 F.3d 742, 762-63 (4th Cir. 1998) (stating that plaintiff failed to state a *prima facie* case because she voluntarily withdrew her application, and there was no indication that her employer "prevented her from applying"); *Brown v. McLean*, 159 F.3d 898, 903 (4th Cir. 1998) (refusing to

Sebelius argues that this exception does not apply here because "there was nothing 'suspect' at all about the selection process."  Def. Mot. 20.  This Court previously noted that the timing of the posting on Jackson's last day and Sokolik's failure to tell Jackson about the GS-14 position though he knew of her interest indicated a suspect hiring process.[11]  An application was not required.

> b.   Qualified for the Position

Sebelius further argues that because Jackson "did not have any prior experience in background check work" and "never volunteered to work on it," she was not qualified for the job. Def. Mot. 23.  Jackson contends that "whether background check experience is a requirement of the position is in genuine dispute."  Pl. Opp. 8.  The Court agrees.

---

"find that [an employee] applied for the DCS position based on his mistaken assumption that he would automatically be considered for it"); *Berez v. Prudential Ins. Co. of America*, No. 92-2206, 1993 WL 104670, at *3 (4th Cir. 1993) (alleging no intentional concealment by the employer); *Darden v. Housing Auth. of Baltimore*, No. PWG-06-216, 2006 WL 3231964, at *5 (D. Md. Nov. 7, 2006) (involving an employee who knew about the position "but did not make himself available for an interview, which was an integral part of the application process . . .").

[11] "It is undisputed that CMS formally posted job openings, and the GS-14 position was posted on December 10, 2007.  Sokolik did not tell any employees about the opening before it was posted.  Sebelius acknowledges that Jackson had repeatedly asked Sokolik about a GS-14 position."  Mem. Op. 10.  Sebelius offers non-discriminatory reasons for the timing of the posting and Sokolik's silence.  These will be considered in the second stage of the Court's *McDonnell Douglas* analysis.

In the "Summary of Duties," the GS-14 position lists that, among other things, the new hire will "provide technical direction for the agency's efforts with respect to background checks and functions related to accreditation or approval of health care facility staff in long-term care programs." Def. Mot. Ex. 18 at 2. Experience in background check work is not, however, listed in the "Minimum Qualification Requirements," "Special Experience," or "Knowledge, Skills and Abilities" sections of the description. *Id*. at 2-3. There is also conflicting testimony about whether background check experience was required for the position. Sebelius contends that "the entire reason the position was authorized was so that the incumbent could fulfill the Agency's new responsibilities under the MMA to perform, *inter alia*, background check-related work and accreditation." Def. Mot. 23; *see also* Hamilton Aff. 4. But another member of the promotion panel did not believe there was any connection between the MMA and the creation of the new GS-14 position. Angela Brice-Smith Dep. 24:2-6, December 2, 2005. The Human Resources Specialist who approved the new position also testified that "the criminal background function was not part of the" position description. Def. Mot. Ex. 15 at 2. Sokolik's deposition testimony further indicated that, had Jackson applied, she "could have been competitive for the [GS-14] position." Sokolik Dep. 119:4-5. Thus, whether the position required

experience in background check work is a disputed material fact that bars summary judgment.

### c.   Circumstance Giving Rise to an Inference of Discrimination

Jackson's non-promotion gives rise to an inference of discrimination because Wolfe, a Caucasian woman, was given the job. *See Schafer v. Maryland*, 555 F. Supp. 2d 572, 578 (D. Md. 2008). This inference is bolstered by circumstantial evidence of discrimination, i.e., the job posting on Jackson's last day with DACS and Sokolik's failure to tell her about the vacancy despite his knowledge of her interest in such a position.

### 2.   Legitimate, Nondiscriminatory Reasons

Jackson's *prima facie* case of discrimination may be rebutted by evidence of a legitimate, nondiscriminatory reason for CMS's actions. *Schafer*, 555 F. Supp. 2d at 576.

### a.   Sokolik did not Control the Timing

Sebelius explains that the description and approval of the new GS-14 position involved numerous steps and several people within CMS; therefore, Sokolik did not control the timing of the job posting. Def. Mot. 20. It is undisputed that Sokolik completed his part of the vacancy posting process on November 9, 2004, over a week before Jackson told him that she was leaving DACS and a month before the position actual posted. *See* Def.

Mot. Ex. 9 at 3; Second Doris M. Jackson Dep. 35:1-3, May 14,
2009; Def. Mot. Ex. 18 at 1.  It is also undisputed that Sokolik
did not have control over later parts of the job approval and
posting process.  *See* Brice-Smith Aff. 5; Hoffman Aff. 3;
Hamilton Dep. 5.  Thus, Sebelius contends that the posting on
Jackson's last day was not discriminatory but merely a "fluke."
Def. Mot. 20 (*quoting* Hoffman Aff. 3).

> b.   Sokolik's Non-disclosure Policy

Sebelius argues that Sokolik did not inform Jackson about
the opening because it was possible that the position would be
withdrawn or delayed, and he did not want to "unduly rais[e]
employee expectations."  Def. Mot. 20; *see* Sokolik Dep. 120:20-
121:5.  Sokolik has stated that he did not tell Jackson about the
GS-14 position because it was his "policy not to announce new
jobs until they've been officially approved and are ready to be
posted."  Sokolik Aff. 4.  Indeed, Sokolik testified that he does
not tell any staff member about job openings "under any
circumstances."  Sokolik Dep. 122:2-122:6.  This non-disclosure
policy was a legitimate, nondiscriminatory reason not to tell
Jackson about the job before it was posted.

> c.  More Qualified Candidate

Sebelius further contends that Jackson was not selected for
the job because "she did not apply and she was not better

qualified than the selectee Amber Wolfe." Def. Mot. 24. As
discussed above, the application was waived. But, "job
performance and relative employee qualifications are widely
recognized as valid, nondiscriminatory bases for any adverse
employment decision." *Evans*, 80 F.3d at 960.

### 3. Pretext

Jackson must provide evidence that nondiscriminatory reasons
provided for CMS's actions were a pretext for discrimination.
*Worden v. SunTrust Banks, Inc.*, 549 F.3d 334, 341 (4th Cir.
2008); *Evans*, 80 F.3d at 960. Proof that the defendant's reasons
are false, coupled with a *prima facie* case, permits a factfinder
to conclude that there was discrimination. *Reeves v. Sanderson
Plumbing Prods., Inc.*, 530 U.S. 133, 147-48 (2000).

Jackson argues that pretext is established by Sokolik's
failure to tell her about the new position, "knowing that she
would be interested in applying and that she would become
ineligible if she continued with her plan to transfer." Pl. Opp.
10. Although Sokolik contends that it had been his policy not to
announce openings before they were posted, there is evidence that
he had previously done so. Kosh-Suber testified that Sokolik, in
staff meetings, had previously told employees about possible
vacancies.[12]  Jacqueline Kosh-Suber Dep. 33:19-34:2, Dec. 1,

---

[12] Kosh-Suber stated: "[W]henever there was a possibility of
[CMS] getting a position in the section if we had a staff meeting
or something, [Sokolik brought] it up and talked about it."

2005.  Hamilton testified that he would expect a manager to tell his staff about a new job opening, although he would be hesitant because the job could be cancelled before it is posted.  Hamilton Dep. 52:3-53:5.  As previously noted by this Court, this testimony refutes Sokolik's assertion that it was "policy" not to announce jobs before they were posted.

To show that Wolfe's superior qualifications were also pretextual, Jackson notes that this Court had observed "inconsistencies about Amber Wolfe's qualifications for the promotion."[13]  Mem. Op. at 13.  The supplemental evidence produced during discovery did not resolve these inconsistencies.  Thus, viewed in a light most favorable to Jackson, there is a genuine dispute whether Sokolik discriminated against her by concealing the GS-14 position and hiring Wolfe.

---

Kosh-Suber Dep. 33-19-33:22.  Kosh-Suber stated that "when we had a staff meeting, he brought [it] up so that the staff knew that there was a possibility of the positions."  Kosh-Suber Dep. 34:1-34:2.

[13] Sokolik has stated that the promotion panel "reached a consensus that Amber Wolfe was the best candidate," as she was the only candidate who "worked extensively on both accreditation issues and the criminal background function."  Sokolik Aff. 4.  Sokolik has also stated that Wolfe was "far superior to any of the other candidates."  *Id.*; Pl. Ex. 24, at 2 (Selection Certificate).  However, Helaine Jeffers, a promotion panel member, has testified that three individuals received the highest score and there was no clear favorite.  Helaine M. Jeffers Dep. 51:1-51:11, Dec. 1, 2005.  Jeffers also testified that Sokolik-- as selecting official--decided whom to promote, and the panel did not reach a consensus.  *Id.* 50:18-52:5.  Indeed, Sokolik never sought Jeffers's recommendation, and she learned that Wolfe got the job after the decision was made.  *Id.* 52:5-52:22.

C.    Failure to Respond Under Rule 56(e)(2)

In her reply, Sebelius argues that Jackson relied too heavily on this Court's previous denial of summary judgment and "failed to make proper response to the facts and arguments raised" in the instant motion under Fed. R. Civ. P. 56(e)(2).[14]  Def. Reply 14-16. Previously, this Court held that Jackson had established a genuine issue of material fact on several elements of her discrimination claim.  Sebelius is correct that the previous denial is not "law of the case," and does not preclude summary judgment.  *See Plotkin v. Lehman*, 178 F.3d 1285, 1285 (4th Cir. 1999) (*quoting Perez-Ruiz v. Crespo-Guillen*, 25 F.3d 40, 42 (1st Cir. 1994)).  But Jackson has met her Rule 56(e)(2) duty to respond.  In Jackson's opposition to this motion, she cited this Court's previous order and opposed Sebelius's new arguments with testimony from numerous depositions; she has shown her entitlement to a trial.[15]

---

[14] Rule 56(e)(2) requires that an opposing party "by affidavits or as otherwise provided in this rule-set out specific facts showing a genuine issue for trial.  If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party."  Fed. R. Civ. P. 56(e)(2).

[15] *See* Pl. Opp. 4-6.  One of Jackson's primary arguments is that the current motion "offers no new grounds or evidence to support summary judgment."  *Id*. at 7.  Thus, her reliance on the Court's previous analysis is appropriate.

III. Conclusion

For the reasons stated above, Sebelius's motion for summary judgment will be denied.


<u>October 8, 2009</u>                          <u>        /s/               </u>
Date                                    William D. Quarles, Jr.
                                        United States District Judge